```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
UNITED STATES OF AMERICA               :
                                       :
          -v-                          :      06 Cr. 600 (DLC)
                                       :
ALI AWAD, ABDI EMIL MOGE, and ABDULAHI :        OPINION
HUSSEIN,                               :        AND ORDER
                                       :
               Defendants.             :
                                       :
-------------------------------------- X
```

Appearances:

For United States of America:

Daniel Lawrence Stein
Guruanjan Sahni
Seetha Ramachandran
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

For Ali Awad:

Michael Hueston
350 Fifth Avenue, Suite 4810
New York, New York 10118

For Abdi Emil Moge:

Sidney L. Moore Jr.
Moore and Palmer
429 North Dooly Street
Montezuma, Georgia 31063

For Abdulahi Hussein:

Neil Checkman
111 Broadway, Suite 1305
New York, New York 10006

DENISE COTE, District Judge:

This Opinion and Order addresses mid-trial and post-trial motions by the three defendants in this case who were convicted of crimes at the conclusion of a jury trial running from June 4 through June 26, 2007.  All of the mid-trial and post-trial motions are denied.

BACKGROUND

As explained in prior opinions in this action and at trial, cathinone is a stimulant and a Schedule I controlled substance. It occurs naturally in the leaves of the khat plant but racemizes over time to form other chemicals.  Users of khat chew the plant's leaves.  Khat is grown in the Horn of Africa. United States v. Muse, No. 06 Cr. 600, 2007 WL 391563, at *1 (S.D.N.Y. Jan. 30, 2007).

The three defendants whose motions are at issue were tried on charges contained in the first superseding indictment[1] ("Indictment").  As relevant here, Counts I and II charged all three defendants -- Ali Awad ("Awad"), Abdi Emil Moge ("Moge"), and Abdulahi Hussein ("Hussein") -- with conspiring to distribute or possess with intent to distribute cathinone and

---

[1] Although Moge references the redacted indictment, which was shown to the jury, it is appropriate to consider the unredacted version for purposes of assessing notice to the defendants of the crimes with which they were charged.

with conspiring to import cathinone.  Count III charged Moge

with a money laundering conspiracy.[2]

Briefly, the evidence at trial established that Awad was

involved with the khat business beginning in 1999.  He

principally imported khat through express mail packages received

in New York, eventually becoming a significant organizer of the

New York importation and distribution network.  Moge worked

principally from Minnesota, where a large community of Somalis

lives in the Twin City area.  Moge played a central role

distributing khat within this community, having arranged to

receive the khat through couriers and by express mail packages

sent from abroad.  Hussein worked in the khat business on the

East Coast, and was a retail seller of khat in Portland, Maine.

On June 14, at the close of the Government's case-in-chief,

Awad, Moge, and Hussein made oral motions for acquittal pursuant

to Rule 29(a) of the Federal Rules of Criminal Procedure.  The

Court reserved decision on these motions pursuant to Rule 29(b).

On June 26, the jury found all three defendants guilty of

conspiring to distribute or to possess with intent to distribute

cathinone, and found that the Government had not proven that the

Count I conspiracy succeeded in distributing cathinone.  The

jury found Awad and Moge, but not Hussein, guilty of conspiring

---

[2] Two additional counts charged Awad and Moge with engaging in a continuing criminal enterprise ("CCE").  Awad and Moge were acquitted on the CCE charges.

to import cathinone, and found that the Count II conspiracy succeeded in importing cathinone.  Finally, the jury found Moge guilty of conspiring to launder money.

Moge and Awad filed timely post-trial motions.[3]  On July 3, Moge filed a post-trial motion for a judgment of acquittal pursuant to Rule 29(c) and a motion for a new trial, presumably pursuant to Rule 33.  Also on July 3, Awad filed a Rule 29(c) motion.  Moge submitted a memorandum in support of his Rule 29 and 33 motions on August 8, followed by an amended version filed on August 13.[4]


DISCUSSION

A defendant who challenges the sufficiency of the evidence to support his conviction "bears a heavy burden."  United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (citation omitted).

---

[3] Moge's post-trial motion was filed by his trial counsel Sidney Moore, who asked to be relieved as counsel following the verdict, but who applied to appear again on Moge's behalf on August 8, 2007.  Both of his applications were granted.  In the interim, Moge was represented by appointed counsel from the Criminal Justice Act panel.

[4] The August 13 memorandum also purports to seek arrest of judgment pursuant to Rule 34.  Moge, however, made no timely Rule 34 motion.  As Moge concedes, moreover, the "fair warning" argument upon which he premises his argument for arrest of judgment was discussed at length and rejected in the ruling on the defendants' joint motion to dismiss the Indictment.  United States v. Muse, No. 06 Cr. 600, 2007 WL 391563, at *2-4 (S.D.N.Y. Jan. 30, 2007).

In deciding such a motion, the court must "view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could have been drawn in its favor."  United States v. Tubol, 191 F.3d 88, 97 (2d Cir. 1999) (citation omitted).  "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt."  Jackson, 335 F.3d at 180.

Rule 33 authorizes a district court to grant a new trial "if the interests of justice so require."  Fed. R. Crim. P. 33. A motion for a new trial may be granted only with "great caution and in the most extraordinary circumstances."  United States v. Stewart, 433 F.3d 273, 296 (2d Cir. 2006) (citation omitted). The motion should be granted, however, where there has been a "manifest injustice," that is, "a real concern that an innocent person may have been convicted."  United States v. Snype, 441 F.3d 119, 140 (2d Cir. 2006) (citation omitted).

The plain error standard used in appellate review applies in the trial court to post-trial claims that could have been but were not raised during trial.  United States v. Blade, 336 F.3d 754, 757 (8th Cir. 2003); see also United States v. Lombardozzi, 491 F.3d 61, 72-73 (2d Cir. 2007) (plain error in context of appellate review).

5

> That standard is not met unless there is, inter alia,
> (1) error, (2) that is plain, and (3) that affects
> substantial rights.  If all three conditions are met,
> [a] court may then exercise its discretion to notice a
> forfeited error, but only if (4) the error seriously
> affects the fairness, integrity, or public reputation
> of judicial proceedings.  Reversal for plain error
> should be used sparingly, solely in those
> circumstances in which a miscarriage of justice would
> otherwise result.

Lombardozzi, 491 F.3d at 72 (citing, among other cases, Johnson

v. United States, 520 U.S. 461, 466-67 (1997)).


Moge's Post-Trial Motions

Moge's initial submission in support of his post-trial

motions was an outline of several issues but did not provide any

reasoning or legal authority to support either an acquittal or a

new trial.  After receiving an extension of time in which to

file an additional submission in support of his post-trial

motions, Moge submitted a memorandum of law, which was later

amended and submitted as a reply ("Reply").  The Reply provided

arguments in support of some of his previous claims and raised

several new claims of error and insufficiency.  Those claims

that Moge presented in his Reply are considered below.  None of

his claims is meritorious.

I.    Money Laundering Conspiracy

Moge's first group of arguments, in support of his Rule 29 motions, concerns his conviction on Count III for participating in a conspiracy to commit money laundering.  The first of his two challenges to his conviction on this count concerns the charge, which defined the proceeds of specified unlawful activity to include a conspiracy to import or distribute a controlled substance.  In his second challenge, Moge argues that the Government failed to show that a conspiracy to distribute cathinone existed.

Before addressing these arguments, some background is in order.  The money laundering statute, as relevant to this case, creates criminal liability for one who,

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such <u>a financial transaction which in fact involves the proceeds of specified unlawful activity</u>--

> > (A)(i) with the intent to promote the carrying on of specified unlawful activity; or . . .

> > (B) knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .

18 U.S.C. § 1956(a)(1) (emphasis supplied).

The money laundering statute defines "specified unlawful activity" to include certain predicate acts listed

7

in the Racketeer Influenced and Corrupt Organizations Act
("RICO").  Id. § 1956(c)(7)(A).  As relevant here, these
include "any offense involving . . . the felonious
manufacture, importation, receiving, concealment, buying,
selling, or otherwise dealing in a controlled substance . .
. punishable under any law of the United States."  Id. §
1961(1)(D)).

Count III charged Moge with conspiring to commit money
laundering.  See 18 U.S.C. § 1956(h).  The jury was charged
that "specified unlawful activities" included
"distributing, possessing with intent to distribute, or
importing a controlled substance, and conspiring with
another to do any of these acts."  United States v. Muse,
No. 06 Cr. 600, 2007 WL 1989313, at *11 (S.D.N.Y. July 3,
2007).[5]

As noted, Moge first challenges the charge.  He argues that
a conspiracy to launder money must have an "achievable" object
and that the jury charge's inclusion of conspiracy in the list
of "specified unlawful activit[ies]" constituted an error of
statutory interpretation.  At the charge conference, the Court

_____

[5] The jury charge was published in a Memorandum Opinion of July
3, to assist counsel in advising those defendants who are
awaiting trial in this case about the law that will be applied.
United States v. Muse, No. 06 Cr. 600, 2007 WL 1989313 (S.D.N.Y.
July 3, 2007).

drew attention to the list of "specified unlawful activities" in the money laundering conspiracy charge, and its inclusion of conspiracies to violate the controlled substance laws.  The implications of this fact were discussed as well, and no counsel objected to this aspect of the charge.  Therefore, this statement is reviewed for plain error.

A conspiracy to distribute or import a controlled substance can constitute specified unlawful activity.  As noted, the money laundering statute incorporates by reference the RICO predicate acts defined in 18 U.S.C. § 1961(1)(D).  "Conspiracies to violate the [controlled substance] laws, if proven, are properly chargeable as predicate acts" under RICO.  United States v. Benevento, 836 F.2d 60, 72 (2d Cir. 1987), abrogated on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989); see United States v. Weisman, 624 F.2d 1118, 1123-24 (2d Cir. 1980) (discussing textual reasons for interpreting Section 1961(1)(D) to include conspiracies); see also United States v. Jones, 482 F.3d 60, 71 (2d Cir. 2006) (treating narcotics conspiracy as a RICO predicate act).  The charge, therefore, did not err in its description of the statute.  The jury charge correctly stated the elements of the underlying substantive offense of money laundering and of conspiracy to commit that crime.

Moge next argues that the Government failed to show that a conspiracy to distribute cathinone existed.  This argument reflects a misunderstanding of both the crime charged in Count III and the jury's verdict.  Count III charged Moge with participating in a conspiracy to commit money laundering. Therefore, the Government was only required to prove, in connection with the element on which Moge is focusing, that the object of the conspiracy was to conduct a financial transaction which involved the proceeds of specified unlawful activity, such as a conspiracy to import or distribute some controlled substance.  Moge was not charged with the substantive crime of money laundering.  In any event, the jury also convicted Moge of conspiracy to distribute (Count I) and to import (Count II) cathinone or some substance controlled under American drug abuse law.  Muse, 2007 WL 1989313, at *6.  This verdict is amply supported by the evidence.  Therefore, Moge's argument that the evidence was insufficient to show the existence of a conspiracy to distribute or import a controlled substance fails.  To the extent that Moge contends that the jury had to find that the financial transaction involved the proceeds of a conspiracy to distribute cathinone, as opposed to "some" controlled substance, that argument is rejected.

Moge emphasizes that in rendering a special verdict, the jury found that the Government had not proven beyond a

reasonable doubt that the khat which the conspirators distributed actually contained cathinone.  In making this argument, Moge ignores the jury's finding that cathinone was successfully imported.  In any event, there is no requirement that the conspirators succeed in achieving the object of the conspiracy in order to be guilty of the crime of conspiracy. See United States v. Desimone 119 F.3d 217, 223 (2d Cir. 1997) ("[T]he absence of an actual sale or seizure of narcotics does not render insufficient the proof of a conspiracy to distribute it."); see also United States v. Recio, 537 U.S. 270, 275 (2003) (holding that a conspiracy does not automatically terminate when the government makes it impossible for the conspiracy to achieve its ends); United States v. Wallace, 85 F.3d 1063, 1068 (2d Cir. 1996) ("That the conspiracy cannot actually be realized because of facts unknown to the conspirators is irrelevant").

Moge's appointed counsel, who is no longer representing him, argued orally on August 8, 2007 that the fact that the charge's definition of "specified unlawful activity" included conspiracy effected a constructive amendment of the Indictment, which defines the proceeds of specified unlawful activity as "the proceeds of illegal narcotics transactions."[6]  (Emphasis

---

[6] Although cathinone is a stimulant, and not technically a narcotic, the defendants do not take issue with the Indictment's use of the word "narcotics" in this context, and such a challenge would be untenable.  See United States v. Ansaldi, 372

supplied).  In effect, Moge's counsel argued that a conspiracy
is not a transaction.

A constructive amendment "is a per se violation of the
Grand Jury Clause of the Fifth Amendment requiring reversal."
United States v. Rigas, 490 F.3d 208, 225-26 (2d Cir. 2007).
"To establish a constructive amendment, [the defendant] must
show that trial evidence or the jury instructions so altered an
essential element of the charge that, upon review, it is
uncertain whether the defendant was convicted of conduct that
was the subject of the grand jury's indictment."  Id. at 227-28
(citation omitted).  "[S]ignificant flexibility in proof" is
permitted, "provided that the defendant was given notice of the
core of criminality to be proven at trial."  Id. at 228
(citation omitted).

> If the indictment notifies the defendant of the core
> of criminality, and the government's proof at trial
> does not modify essential elements of the offense
> charged to the point that there is a substantial
> likelihood that the defendant may have been convicted
> of an offense other than the one charged by the grand
> jury, then he has sufficient notice of the charge
> against which he must defend.

Id. (citation omitted).

There was no constructive amendment of the Indictment.  The
Indictment provided Moge with more than sufficient notice of the

---

F.3d 118, 127 (2d Cir. 2004); see also Muse, 2007 WL 391563, at
*9 (citing 22 U.S.C. § 2708(k)(5)).

core of criminality with which he was charged in Count III.  The term "proceeds of illegal narcotics transactions" was broad enough to encompass proceeds of conspiracies to distribute and import a controlled substance.  The Indictment and trial focused on a nationwide conspiracy to import khat containing cathinone and to distribute it in several communities across the country, and to launder the money generated by these endeavors.  See United States v. Dupre, 462 F.3d 131, 140-41 (2d Cir. 2006) (finding common core of criminality where the trial evidence concerned the same elaborate fraudulent scheme alleged in the indictment, but different wire transfers).

There is no likelihood that Moge was convicted of the charge in Count III based on a conspiracy different from that described in the Indictment.  Even if one were to assume that "proceeds of illegal narcotics transactions" should be parsed so finely as to exclude proceeds flowing from the conspiracies charged in Counts I and II to distribute and import cathinone, the evidence and the jury's verdict as a whole would still support Moge's Count III conviction.  They support a finding that Moge joined a conspiracy that had the objective of laundering proceeds of illegal narcotics transactions and that Moge joined this conspiracy with the knowledge that the funds to be laundered were to be proceeds of some felonious activity.  As already noted, through its special verdict the jury also found

that the conspiracy to import cathinone actually succeeded in importing that controlled substance.   Thus, the Government succeeded in proving the substantive crime of importing cathinone.   Whether funds that the conspirators agreed they would launder actually arose from sales of khat with cathinone or of khat without cathinone is not material to this analysis. Thus, there is no constructive amendment of the Indictment.

Even if Moge's constructive variance argument were analyzed under the related doctrine of prejudicial variance between the proof and the Indictment, it would fail.   A "variance occurs when . . . the evidence offered at trial proves facts materially different from those alleged in the indictment."   Dupre, 462 F.3d at 140.   A variance is "fatal to the prosecution" only if it prejudices the defendant by infringing on the "substantial rights that indictments exist to protect -- to inform an accused of the charges against him so that he may prepare his defense and to avoid double jeopardy."   Id. (citation omitted); see Fed. R. Crim. P. 52(a).

Moge has not identified infringement of a substantial right.[7]   Moge has not suggested, and there is no ground to

---

[7] See United States v. Alerre, 430 F.3d 681, 695 n.15 (4th Cir. 2005) (noting a "nonfatal variance" where a jury was instructed that the specified unlawful activity for a money laundering conspiracy charge was a conspiracy to distribute controlled substances and the only drug-related specified unlawful activity

believe, that he would have prepared for trial any differently had the Indictment charged that the specified unlawful activity included the proceeds of a narcotics conspiracy rather than "illegal narcotics transactions."  He also makes no suggestion that he will face double jeopardy as a result of the alleged variance.  Thus, to the extent Moge's post-trial motions are premised on arguments relating to Count III of the Indictment, the motions are denied.[8]

    II.  Type of Drugs

    In his Rule 29 motion, Moge argues that the Government's proof was insufficient to support a conviction because it did not establish conspiracies to import and to distribute cathinone or at least a Schedule I or Schedule II controlled substance, and, in support of his Rule 29 and Rule 33 motions, he renews

---

mentioned in the indictment was distribution of controlled substances in violation of 18 U.S.C. § 841).

[8] In passing, Moge's counsel complains that the jury charge on Count III did not include the requirement that a specified unlawful activity be felonious and that it does not mention khat.  Counsel is mistaken with respect to the felony requirement.  The law requires that the jury be charged that the defendant know that the property involved in a financial transaction represents proceeds of some activity that constitutes a felony under state or federal law.  18 U.S.C. § 1956(c)(1).  The jury was so charged.  See Muse, 2007 WL 1989313, at *11.  The charge does not mention "khat" in defining specified unlawful activity for several reasons.  There is no requirement that a specific controlled substance be identified, and in any event khat is not a controlled substance.

his objection to the jury charge's reference to "some substance controlled under American drug abuse law."  Both arguments fail.

Moge's first argument, insofar as it seeks a judgment of acquittal on Count II, can be swiftly rejected.  The jury found that the conspiracy charged in Count II succeeded in importing cathinone, which is a Schedule I controlled substance. Consequently, there is no reason in law, or based on the evidence presented at trial, to find that the Government failed to convict Moge of conspiracy to import a Schedule I controlled substance in violation of 21 U.S.C. § 841(b)(1)(C).  This charge carries a twenty-year maximum term of imprisonment.

The analysis of Moge's argument in the context of Count I, which charged a conspiracy to distribute cathinone, is more complex.  Here, the jury found that the Government had failed to prove beyond a reasonable doubt that the conspiracy succeeded in distributing cathinone.  The charge permitted the jury to convict Moge if it found that the conspirators agreed to distribute khat knowing that it contained cathinone or with the understanding that it contained some substance controlled under American drug abuse law.  As Moge points out, Count I charged a conspiracy in violation of §§ 841(a)(1) and 841(b)(1)(C) of Title 21.  While the former makes it a crime to distribute any controlled substance, the latter imposes a penalty only for distributions of Schedule I and II controlled substances.  The

penalties for the drugs on the other schedules range from a maximum of one year's to five years' imprisonment.

Moge's Rule 29 motion for Count I must be denied.  As explained in prior Opinions issued in this case, Moge's conviction under § 841(a)(1) is properly supported by the jury's finding that he intentionally participated in a conspiracy to distribute some substance controlled under American drug abuse law.  Whether his maximum term of imprisonment on Count One is twenty years or as low as one year is an issue that will be addressed at sentencing.[9]

Next, Moge argues in support of his Rule 29 and Rule 33 motions that the jury charge's use of the term "American drug abuse law" permitted the jury to convict Moge on an inappropriate ground, because the charge language is broad enough to include state law and federal laws other than the Controlled Substances Act.  As explained at trial, this portion of the charge was modeled on the charge approved by the First Circuit in United States v. Hussein, 351 F.3d 9, 17-20 (1st Cir. 2003).  See also United States v. Muse, 2007 WL 1536704, at *2-3 (S.D.N.Y. May 29, 2007) (discussing knowledge requirement).  The word "American" was substituted for the word "federal" to avoid

---

[9] Khat can contain cathine, which is arguably a Schedule IV controlled substance, but the Government did not proceed to trial on the theory that the defendants imported or distributed cathine, and the jury was therefore instructed that cathine was not a controlled substance.  Muse, 2007 WL 1989313, at *3.

a term that the law does not require any defendant, much less an immigrant, to understand, and that was likely to confuse the jury.  The jury was repeatedly instructed that khat itself was not a controlled substance, making clear that any state laws criminalizing khat leaves as a whole were not at issue here. Muse, 2007 WL 1989313, at *3.  The jury was also clearly instructed that agricultural regulations "are entirely separate from American drug abuse law."  Aside from these regulations and the Controlled Substances Act and its implementing regulations, the jury did not hear argument or instructions regarding any other drug laws.[10]  Therefore, Moge has failed to show that the use of the term "American drug abuse law" was erroneous or created any injustice.

III. Moge's Knowledge of Sofia Roble's Ohio Khat Conviction

Moge argues for a new trial on the ground that the Government used information about co-conspirator Sofia Roble ("Roble") in its summation "for its truth" even though the

---

[10] Moge's reference to FDA regulations is curious.  There was no evidence offered at trial to support any argument or inference that the FDA misbranding regulations factored in any way in the activities at issue at trial or the defendants' scienter.  Where there was evidence about another regulatory scheme, that is, the Department of Agriculture's program of seizing foreign plants at our borders, the jury was specifically charged that acts intended to evade those regulations were not at issue and could not constitute evidence of guilt of the crimes charged in the Indictment.  Moge has not shown that a similar charge regarding FDA regulations was warranted.

evidence had been admitted solely for other, limited purposes. Documents concerning Roble were seized from Moge's apartment and offered into evidence at trial. For example, one of the documents, which discussed Roble's Ohio arrest,[11] described khat as a controlled substance and as containing the Schedule I controlled substance cathinone. The jury was instructed both at the time the evidence was admitted and during the final jury charge that these documents were to be considered only to the extent they shed light on Moge's knowledge and intent with respect to the charges in the Indictment and the existence of relationships among the alleged conspirators. Muse, 2007 WL 1989313, at *19.

For reasons explained on the record on June 19, the Government's summation argument, to which Moge's counsel made no contemporaneous objection, taken in context, did not urge the jury to consider the Roble documents for the truth of their reports. The Government used the documents to rebut an argument by Moge's counsel regarding what Moge would have learned and understood from the documents found in his apartment. The Government argument was not improper, did not create a manifest injustice, and does not require a new trial.

---

[11] Roble's conviction was overturned on appeal because she had not been afforded her choice of counsel. State v. Roble, 2006 Ohio 328 (App. Jan. 27, 2006).

Awad's Rule 29 Motion

Awad brings a Rule 29 motion based on his assertion that there was a prejudicial variance between the Indictment and the proof that the jury used to convict him on Counts I (distribution conspiracy) and II (importation conspiracy), because the evidence revealed multiple smaller conspiracies rather than a single distribution conspiracy and a single importation conspiracy.[12]  At the defendants' request, the jury was instructed on the law of multiple conspiracies.  Muse, 2007 WL 1989313, at *5; see United States v. Jones, 482 F.3d 60, 72 (2d Cir. 2006); United States v. Geibel, 369 F.3d 682, 689 (2d Cir. 2004); United States v. Berger, 224 F.3d 107, 114-15 (2d Cir. 2000).  Awad did not claim at trial and does not claim now that this charge contained any error.

As the jury found and as described in detail in the Government's opposition to this motion, there was ample evidence to support the jury's finding that Awad participated in the conspiracies charged in Counts I and II.  The evidence showed an interlocking set of relationships among khat importers and distributors that stretched across the country.  They depended on a small group of exporters stationed in Europe, and moved the khat across the country swiftly through a network of

---

[12] Awad also joins in several of Moge's Rule 29 motions, each of which has been rejected.

distribution centers, drivers, and other delivery modes.  They shared bundles of khat with each other depending on the intensity of demand and abundance of supply in one region or city and another.  Therefore, the jury was able to find that the Government had proven beyond a reasonable doubt that the extensive conspiracies charged in the two counts of the Indictment existed and that Awad participated in both of them. There was no variance.

Awad makes two arguments in an effort to show a variance. He points to evidence that some of the conspirators, including him, stole khat shipments from each other, and that the American importers of khat switched among different European suppliers to keep routes of supply open.  Neither of these facts -- reflecting the intensely competitive and lucrative nature of the khat trade -- prevented the jury from drawing the conclusion that the conspiracies charged in Count I or Count II of the Indictment existed.  The first of these issues was particularly emphasized in defense summations, which dwelt at length on the multiple conspiracy defense.  Intraconspiracy disputes and shifting sources of supply do not create an insuperable barrier to the finding that the charged conspiracies existed.  See United States v. Heinemann, 801 F.2d 86, 92 (2d Cir. 1986).

Finally, Awad finds prejudice from the admission at trial of evidence that certain individuals were arrested or convicted

for offenses related to khat dealing and that some European couriers came with their children in the hope that that would assist them in evading U.S. Customs screening.  Where appropriate and requested, limiting instructions were given with the admission of evidence and in the final charge to the jury. The jury clearly followed its duty to look at the evidence for each defendant and for each crime separately.  One of the four defendants was acquitted, and each of the three remaining defendants was convicted on fewer than all of the charges brought against him.  Awad has shown neither error nor prejudice.  His Rule 29 motion is denied.

Hussein's Rule 29(a) Motion

Hussein presented an oral Rule 29 motion at the close of the Government's case, arguing that he was entitled to a judgment of acquittal because (1) the Government proved multiple, smaller conspiracies instead of the single conspiracy charged in Count I, and (2) the proof was insufficient to establish that Hussein joined the charged conspiracy or that he had the requisite knowledge to be convicted of conspiracy to distribute cathinone.  The first argument is considered and rejected above.  The second fails as well.

The evidence at trial established that Hussein was a valuable and full-fledged participant in the conspiracy charged

in Count I.  It also established that he had knowledge that the objective of the conspiracy was to distribute or possess with intent to distribute a controlled substance, rather than a plant that did not contain a controlled substance.  To give just one vivid example, in a wiretapped conversation between Awad and Hussein, Awad commented that "When you get caught with the khat they won't say it's khat, they will say the person got arrested for <u>substance control</u>," and Hussein responded, "That's the way it is."  Awad then stated, "So the <u>substance control</u> is <u>cocaine</u>, marijuana, <u>heroin</u>.  If you get caught with all those things, they will say that you got caught with <u>substance control</u>."  Hussein responded, "<u>Exactly</u>."  The evidence was more than sufficient to support a finding by the jury that Hussein believed that khat trafficking was controlled under the same laws that prohibit trafficking in other controlled substances. Hussein's Rule 29(a) motion is denied.[13]

---

[13] The Rule 29 motions made by Awad and Moge at the conclusion of the Government's case are also denied.

CONCLUSION

The Rule 29 and Rule 33 motions brought by defendants Abdi Emil Moge, Ali Awad, and Abdulahi Hussein arising out of the June 2007 trial are denied.

SO ORDERED:

Dated:   New York, New York
         October 3, 2007

                                    DENISE COTE
                              United States District Judge

24