```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES OF AMERICA                 :
                                         :
        -v-                              :      06 Cr. 600 (DLC)
                                         :
ALI AWAD, ABDI EMIL MOGE, and ABDULAHI   :         OPINION
HUSSEIN,                                 :         AND ORDER
                                         :
            Defendants.                  :
                                         :
---------------------------------------- X
```

Appearances:

For United States of America:

Daniel Lawrence Stein
Guruanjan Sahni
Seetha Ramachandran
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

For Ali Awad:

Michael Hueston
350 Fifth Avenue, Suite 4810
New York, New York 10118

For Abdi Emil Moge:

Sidney L. Moore Jr.
Moore and Palmer
429 North Dooly Street
Montezuma, Georgia 31063

For Abdulahi Hussein:

Neil Checkman
111 Broadway, Suite 1305
New York, New York 10006

DENISE COTE, District Judge:

Defendants Ali Awad and Abdi Emil Moge were convicted after a jury trial of conspiring to distribute or possess with intent to distribute cathinone and with conspiring to import cathinone. Moge was also convicted of conspiracy to launder money.  As part of the defendants' sentences, criminal forfeiture orders were entered against them at the request of the Government. Defendants now challenge the orders and argue that defendants in a drug case are not subject to forfeiture in the form of a money judgment, where the defendant does not currently have assets to satisfy the money judgment.  For the reasons that follow, forfeiture orders can be entered under 21 U.S.C. § 853 in drug cases regardless of the defendant's assets at the time of sentencing.  Additionally, contrary to Awad's untimely assertions following sentencing, the amount of his forfeiture order is supported by the preponderance of the evidence.

BACKGROUND

Moge and Awad were indicted on a Superseding Indictment dated July 24, 2006, alleging, <u>inter alia</u>, a khat distribution conspiracy (Count I), a khat importation conspiracy (Count II), and a money laundering conspiracy (Count III).  The Indictment included forfeiture allegations as to Counts I, II, and III.  On June 26, 2007, a jury convicted Awad and Moge of conspiring to

distribute or to possess with intent to distribute cathinone, a controlled substance found in khat,[1] and found that the Government had not proven that the conspiracy succeeded in distributing cathinone.  The jury found Awad and Moge guilty of conspiring to import cathinone, and found that the conspiracy succeeded in importing cathinone.  The jury also found Moge guilty of conspiring to launder money.  Moge and Awad's post-trial motions for judgment of acquittal and a new trial were denied by Opinion dated October 3.

In advance of sentencing, an evidentiary hearing was conducted on September 27 pursuant to United States v. Fatico, 579 F.2d 707 (2d Cir. 1978), to determine, inter alia, the quantity of khat which should be assessed as relevant conduct in connection with the calculation of the Sentencing Guidelines offense level for these defendants.  On October 4, the Government submitted proposed orders of forfeiture against Moge (for $9,458,000) and Awad (for $10,000,000).  In an accompanying letter, the Government asserted that, "[u]nder the federal drug laws, convicted defendants are required to forfeit to the United States the proceeds and instrumentalities of their illegal conduct."  The Government further represented that the amount of the money judgment against each defendant was "a reasonable

---

[1] The relationship between khat and cathinone is discussed at some length in United States v. Awad, No. 06 Cr. 600, 2007 WL 1988382 (S.D.N.Y. July 3, 2007).

approximation of the gross proceeds obtained as a result of the conspiracy." Specifically, the Government calculated the amount of the money judgment by multiplying the drug quantities it had argued were attributable to each defendant by the street value of khat, the botanical source of cathinone.

Following the Fatico hearing, the Government and defendants submitted proposed findings of fact and sentencing memoranda. These memoranda mainly concerned disputed cathinone quantities attributable to each defendant, and the imposition of certain sentencing enhancements. In these submissions, none of the defendants challenged the legal or factual bases for entry of the forfeiture orders in the amounts requested by the Government.

Defendants were sentenced on October 5, and the orders of forfeiture were imposed orally in the amounts of $4,646,000 as to Moge, and $10,000,000 as to Awad.[2] At sentencing, the defendants questioned whether forfeiture orders could be entered

---

[2] The Government also requested at sentencing that a money judgment be entered against Abdulahi Hussein, who was convicted at trial and sentenced along with defendants Awad and Moge. On the basis of the parties' sentencing submissions, the Court determined that Hussein had been convicted only of a misdemeanor and was subject to a statutory maximum sentence of twelve months' imprisonment. While the Government disputes this determination, it recognizes that a criminal forfeiture order cannot be imposed against a misdemeanant and therefore, by letter dated October 10, 2007, concedes that the order, which had been imposed orally at sentenced but not yet entered, should be vacated.

against them, when they had been convicted of drug crimes and did not have assets to satisfy the money judgments.  The Government and defendants were ordered to submit letters addressing this question.  Letters from the Government and Moge addressed only the legal question presented; Awad's letter addressed that question, and also challenged the amount of the forfeiture order entered against him.

DISCUSSION

I.   Forfeiture Orders under 21 U.S.C. § 853(a)

The criminal forfeiture statute provides that a person convicted of, inter alia, a drug offense "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."  21 U.S.C. § 853(a)(1).  Under the terms of the statute, property subject to forfeiture includes "real property, including things growing on, affixed to, and found in land; and tangible and intangible personal property, including rights, privileges, interests, claims and securities." Id. § 853(b).  The Government contends that this language is mandatory and "not excused by the fact that the defendant dissipated the actual money derived from his offense."  Further, the Government observes that while the

> first wave of cases to hold that criminal forfeiture
> is not limited to specific assets in the defendants
> possession involved forfeiture under the RICO statute

5

> . . . now, money judgments are routinely ordered in every kind of criminal case where (1) criminal forfeiture is authorized; and (2) where the directly forfeitable property is a sum of money that cannot be found at the time the order of forfeiture is entered.

Where a defendant lacks the assets to satisfy the forfeiture order at the time of sentencing, the money judgment against the defendant is effectively an in personam judgment in the amount of the forfeiture order.  As the Seventh Circuit has explained, such a judgment "[i]n effect . . . places a judgment lien against [the defendant] for the balance of his prison term and beyond."  United States v. Baker, 227 F.3d 955, 970 (7th Cir. 2000).  For their part, Awad and Moge contend that this statute is limited by its terms to in rem forfeiture of property in the possession of the defendant at the time of sentencing, and that this limitation cannot be skirted by entry of an in personam money judgment against the defendants themselves.

In two separate submissions, Moge and Awad make two principal arguments, one based on the purpose of 21 U.S.C. § 853(a), and the other based on its language.  With respect to the statute's purpose, Moge assays to distinguish § 853(a) from RICO, and thus rebut the Government's ostensible argument that because RICO permits forfeiture orders in the form of money judgments, such orders are permissible here.  Moge argues that the criminal forfeiture statute at issue here differs from the RICO forfeiture provisions because RICO "is not intended as

6

punishment for the underlying offenses but to prevent the acquisition of property and business interests with money generated from criminal enterprises." Thus, Moge observes, in United States v. Robilotto, 828 F.2d 940 (2d Cir. 1987), the Second Circuit wrote that the RICO forfeiture provision, "unlike other forfeiture statutes, imposes forfeiture directly on an individual as part of a criminal prosecution rather than in a separate proceeding in rem against the property subject to forfeiture." Id. at 948 (citation omitted). Moge appears to read this language to preclude in personam money judgments in non-RICO criminal actions.

With respect to the statute's language, Moge focuses on the word "property," while Awad focuses on the word "forfeit." Moge observes that 21 U.S.C. § 853(b) enumerates various species of property that might be forfeited pursuant to § 853(a). According to the inclusio unius est exclusio alterius canon of statutory construction, Moge argues, this list must be read to exclude any assets that "might be acquired later through legal means." Awad cites a district court case from the Eastern District of Pennsylvania, which he contends is the "one court that has thoroughly analyzed this issue outside of the RICO context." In United States v. Croce, 334 F. Supp. 2d 781 (E.D. Pa. 2004), the court observed that a forfeiture money judgment has two defining features: It is (1) "nonspecific because it is

7

entered for a general sum of money, such as $1 million, even though other kinds of forfeiture are directed at specific items of property (e.g., the $1 million in First National Bank account number 12345 or the 1999 Ford Taurus with VIN# 6789012345)"; and (2) "unlimited because its magnitude bears no relation to the assets that a convict possesses at any particular time."  Id. at 783.  After assessing the history of criminal forfeiture law, American legal precedent, and the federal statutory scheme governing criminal sanctions, the court determined that "[c]ommon-sense notions and dictionary definitions of forfeit suggest that one cannot forfeit something he does not possess," id. at 794, and, accordingly, that a criminal forfeiture order could not be entered against the defendants in the case at bar, where they had been convicted of health-care fraud and money laundering and did not possess assets at the time of sentencing.

While there is no Second Circuit or Supreme Court precedent directly on point, the arguments made by Moge and Awad have been rejected in decisions from the First, Third, Seventh, and Ninth Circuit Courts of Appeals.  These decisions have addressed both the purpose and the language of the criminal forfeiture statute.  In United States v. Casey, 444 F.3d 1071 (9th Cir. 2006), the Government appealed the district court's declining to impose a forfeiture money judgment against a defendant convicted of ecstasy distribution.  The Ninth Circuit observed that the

8

criminal forfeiture statute states that its "provisions . . . shall be liberally construed to effectuate its remedial purposes," 21 U.S.C. § 853(o), and that Congress had identified "punishment for the commission of various drug . . . crimes," Casey, 444 F.3d at 1073 (citing Libretti v. United States, 516 U.S. 29, 39 (1995)), as one such purpose.  Accordingly, the court held that

> [r]equiring imposition of a money judgment on a defendant who currently possesses no assets furthers the remedial purposes of the forfeiture statute by ensuring that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended and disgorge their ill-gotten gains, even those already spent.

Id. at 1074.  In analyzing the statute's purpose, the First and Third Circuits reached similar conclusions.  See United States v. Vampire Nation, 451 F.3d 189, 201-02 (3d Cir. 2006); United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006).

Likewise, these courts have uniformly rejected Moge and Awad's arguments based on the language of the statute.  In Vampire Nation, the Third Circuit focused on the fact that § 853 "does not contain any language limiting the amount of money available in a forfeiture order to the value of the assets a defendant possesses at the time the order is issued."  Vampire Nation, 451 F.3d at 201.  The court therefore found it "clear that an in personam forfeiture judgment may be entered for the full amount of the criminal proceeds."  Id. at 201-02; see also

Baker, 227 F.3d at 970.  While it does not appear that any circuit court has focused on the word "forfeit," as Awad does, it should be noted that the case upon which Awad relies was explicitly reversed on precisely this legal issue in Vampire Nation.  See Vampire Nation, 451 F.3d at 201.[3]

The circuit courts have the better of the argument. Congress has made plain that criminal forfeiture is meant to constitute part of a defendant's sentence in drug crimes, and that the criminal forfeiture statute should be "liberally construed" to effectuate its remedial purposes.  Moge's efforts to distinguish the RICO forfeiture provision from § 853(a) fail because they focus narrowly on language concerning the purpose of the RICO statute, but never engage the clearly-expressed congressional intent embodied in the language of the criminal forfeiture statute.  Moreover, the language of the statute is not as narrow as Moge and Awad urge.  Neither the definition of "property" as provided by the statute, nor the dictionary and common-sense definitions of "forfeit," limit the entry of money judgments to assets held by the defendant at the time of sentencing.  Adopting the position urged by Moge and Awad "would permit defendants who unlawfully obtain proceeds to dissipate

---

[3]   In addition to being explicitly disavowed in Vampire Nation, the district court's decision in Croce was reversed by the Third Circuit.  See United States v. Croce, 209 Fed. App'x 208 (3d Cir. 2006).  Awad's submission makes no reference to the fact that the case upon which he relies is no longer good law.

those proceeds and avoid liability for their ill-gotten gains."
Id. at 202.

Finally, there is no indication that Second Circuit caselaw would require a different result. Indeed, while the Second Circuit has not ruled on this precise issue, the court's jurisprudence suggests at the very least that assets subject to forfeiture orders need not be in the possession of the defendant at the time of sentencing. See United States v. Lizza Indus., Inc., 775 F.2d 492, 499 (2d Cir. 1985) (van Graafeiland, J., concurring in part and dissenting on other grounds) ("The question whether the proceeds of illegal activity must still be in existence in order to be subject to forfeit, while once a matter of some uncertainty, is now generally answered in the negative."). The court thus has the authority to enter criminal forfeiture orders in the form of money judgments, even though the defendants do not currently have assets to satisfy the money judgment.

II.  The Amount of the Forfeiture Order as to Awad

Awad contends that the Government has failed to meet its burden of proving that Awad earned the $10,000,000 in proceeds from the khat conspiracies of which he was convicted, and thus that the forfeiture order entered against him is invalid. For support, he relies on the Fatico hearing testimony of Hassan Sadiq Mohamed, who stated that he earned only $24,000 during the

11

two years Mohamed worked for a khat-distribution organization of which Awad was part.  According to Awad, this figure, juxtaposed with the $10,000,000 sought by the Government in the forfeiture order, "shows that the Government's $10,000,000 figure is baseless."

Awad's challenge to the amount of the forfeiture order entered against him is both untimely and meritless.  The Government submitted its proposed forfeiture orders before the defendants' post-Fatico hearing sentencing submissions were due.  In his lengthy and thoughtful submission, Awad did not once mention the amount of the proposed forfeiture order or raise an argument against it.  His present challenge to the order is therefore untimely.  Additionally, his challenge is meritless because it is based upon arguments about the quantity of khat attributable to Awad that were rejected at sentencing.  As explained in detail at sentencing, the Government proved by a preponderance of the evidence that Awad was responsible for 621,800 bundles of khat, at a street value of between forty and sixty dollars per bundle -- a figure that was advanced at trial and remains undisputed by the defendants.  The Government thus would have been justified in seeking a forfeiture order in any amount up to approximately twenty-four million dollars.  The ten-million-dollar order they sought, and which was entered orally against Awad, is therefore supported by the preponderance

12

of the evidence. Awad's comparison between this amount and Mohamed's salary is unavailing, because the relevant metric for calculating a defendant's forfeiture liability is not some other conspiracy participant's earnings, but rather the amount of money attributable to the defendant by virtue of his role in the conspiracy.

CONCLUSION

Forfeiture orders shall be entered against Moge in the amount of $4,646,000, and Awad in the amount of $10,000,000.

SO ORDERED:

Dated:   New York, New York
         October 24, 2007

                                       _____
                                            DENISE COTE
                                       United States District Judge